# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JMF MEDICAL, LLC, FREEMAN
MD, LLC, NICKLES & ASHLYN
BERGERON, LLC, JOSEPH THOMAS
JR. MD, LLC, ASHLYN KIDD BERGERON,
NATHAN PAUL FREEMAN, JARED
MICHAEL FABRE, LEO DAVID
VERLANDER, JR., JOSEPH THOMAS, JR.,
NICKLES PAUL BERGERON**

                                                  **CIVIL ACTION**

**VERSUS**

                                                  **NO. 19-837-JWD-SDJ**

**TEAM HEALTH, LLC, F/K/A TEAM
HEALTH, INC.; ACS PRIMARY CARE
PHYSICIANS LOUISIANA; TEAM
HEALTH HOLDINGS, INC.; AMERITEAM
SERVICES, LLC, HCFS HEALTHCARE
FINANCIAL SERVICES, LLC**

## RULING AND ORDER

Before the Court is a *Motion to Dismiss Class Action Complaint* by Defendant, Team

Health Holdings, Inc. ("THH") under Rule 12(b)(2); by Defendants, THH, Ameriteam Services,

LLC ("Ameriteam"), HCFS Healthcare Financial Services, LLC ("HCFS"), and Team Health,

LLC ("Team Health") under Rule 12(b)(1); and by all Defendants, THH, Ameriteam, HCFS, Team

Health, and ACS Primary Care Physicians Louisiana ("ACS") (collectively "Defendants") under

Rule 12(b)(6).   (Doc. 19).   Plaintiffs, JMF Medical, LLC ("JMF"), Freeman MD, LLC

("Freeman"), Nickles & Ashlyn Bergeron, LLC ("N&A"), Joseph Thomas Jr. MD, LLC

("Thomas"), Ashlyn Kidd Bergeron ("A.K. Bergeron"), Nathan Paul Freeman ("N.P. Freeman"),

Jared Michael Fabre ("Fabre"), Leo David Verlander, Jr. ("Verlander"), Joseph Thomas, Jr. ("J.

Thomas"), and Nickles Paul Bergeron ("N.P. Bergeron") (collectively "Plaintiffs"), on behalf of

1

themselves and others similarly situated, oppose the motion. (Doc. 28). Defendants filed a reply. (Doc. 32). Defendants also filed supplemental authority in further support of the motion to dismiss. (Doc. 35). Oral argument is not necessary. After carefully considering the law, facts, and arguments of the parties, Defendants' *Motion to Dismiss* is denied pursuant to Rule 12(b)(1), is denied pursuant to Rule 12(b)(2), and is granted in part and denied in part pursuant to Rule 12(b)(6). Plaintiffs' motion for leave of court to amend their *Complaint* is denied.

## I.   FACTUAL ALLEGATIONS

For the purposes of a motion to dismiss, the Court must accept the following factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

### A.   Background

Plaintiffs filed a Class Action Complaint "on behalf of themselves and others similarly situated" against Defendants on December 2, 2019. (Doc. 1 at 2). Plaintiffs "are a group of emergency room physicians and their entities" who worked "for the Team Health Organization"[1] and claim that they filed suit "due to Defendants' routine and systematic failure to pay physicians for the services Plaintiffs provide to their patients." (*Id.*). Specifically, Defendants, "through the Team Health Organization," "do not pay Plaintiffs and other Louisiana physicians for 'Relative Value Units' ("RVUs") earned when patients are treated by nurse practitioners and/or physician assistants … under the physician's direction." (*Id.* at 2-3). Plaintiffs allege that "Defendants are in breach of their contracts with Plaintiffs, have perpetrated wire and mail fraud in furtherance of

---

[1] Plaintiffs allege that the terms "Team Health" and "Team Health Organization", as used in their Complaint, "encompass the collective identity of the Defendants named" in the Complaint, and "also create the RICO enterprise." (Doc. 1 at 2, n. 1).

a racketeering scheme in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and have been unjustly enriched at the expense of Plaintiffs." (*Id*. at 3).

"Team Health" is a "national multi-billion dollar staffing company." (Doc. 1 at 10). "Team Health, through its subsidiaries," allegedly contracted with "approximately 3,900 independent contractor physicians" which included Plaintiffs to "handle emergency care at approximately 3,300 hospitals across the country." (*Id*.). These hospitals are referred to as the "Team Health facilities". Defendants allegedly "signed exclusive contracts" with the Team Health facilities and prevented emergency care physicians from directly contracting with the Team Health facilities. (*Id*.). In order to work in emergency rooms at Team Health facilities, physicians allegedly must contract with Defendants. (*Id*.). "Team Health" also allegedly contracts with physician assistants ("PAs") and nurse practitioners ("NPs") to treat patients under a physician's direction. (*Id*.). PAs and NPs are collectively referred to as Advance Practice Clinicians or "APCs". Under these contracts, Defendants allegedly "make money based on the number of patients each physician is responsible for during his/her shift, and the services provided to each patient." (*Id*. at 11).

**B.    The RVU Bonus Program**

Dating back to 2012, Defendants "sought to add a bonus program" to the contracts of the physicians at Team Health facilities to "incentivize the physicians to take on … more patients … so Defendants could bill more and make more money." (*Id*.). The bonus program was "motivated by the need to attract and retain the best possible physicians" to the Team Health facilities. (*Id*.).

"RVUs assign a value to each service provided and the resources used to provide that service." (*Id*. at 12). RVUs are generated when physicians see the patients directly and when they supervise NPs and PAs. (*Id*.). When RVUs are generated through Plaintiffs' supervision of NPs

and PAs without Plaintiffs seeing the patient directly, this is referred to as "Assisting RVUs", "Supervisory RVUs" or "Shared RVUs". (*Id*.).

Physicians are responsible for every patient whose chart he/she signs. (Doc. 1 at 13). This is the case whether the physician sees the patient directly or supervises an APC's treatment plan. (*Id*. at 13). Plaintiffs allege that when Defendants "recruited Plaintiffs to participate in the RVU bonus program, Plaintiffs were assured that, along with the liability they [were] assuming, they would receive credit for RVUs generated through the supervision of APCs." (*Id*. at 15). Despite this assurance, Plaintiffs claim that Defendants "failed and refused to pay Plaintiffs accordingly." (*Id*.). Plaintiffs refer to this assurance of RVUs for the supervision of APCs and then failure to pay physicians that bonus amount the "scheme" by Defendants through the Team Health Organization. (*Id*. at 16). Each time the Team Health Organization failed to make payment, it "committed a predicate act of wire and mail fraud in furtherance of the RICO conspiracy." (*Id*.).

The contracts between Plaintiffs and Defendants provided for the RVU bonus program for supervision of APCs. (*Id*.). Plaintiffs aver that under the terms of the contracts, Defendants do not have discretion in crediting RVUs and cannot refuse to credit Assisting RVUs toward Plaintiffs; however, Defendants did so in "furtherance of the [s]cheme to defraud the Plaintiffs and the putative class of rightfully owed payments." (*Id*. at 18). Plaintiffs believed that the "data on their weekly paychecks and paystubs reflected bonus credit for the RVUs generated through every chart they signed." (*Id*. at 19). However, Plaintiffs claim that Defendants were "secretly subtracting out the Assisting RVUs from the bonus credit on each paycheck." (*Id*.). Plaintiffs also claim that they were "unable to discern what Defendants were doing" because "the underlying data was hidden" from them. (*Id*. at 20). Therefore, Plaintiffs conclude that Defendants are "in breach of those contracts" and "in bad faith breach of those contracts." (*Id*. at 21).

4

Plaintiffs also claim that "Defendants acted in concert with one another throughout the United States to violate the RICO statute through a pattern of racketeering activity for personal, financial gain, to fraudulently convey false and misleading information concerning the payments to healthcare providers at Team Health facilities." (Doc. 1 at 21). Specifically, Plaintiffs allege that Team Health "created and signed the underlying contract with Plaintiffs", (*id.*); Ameriteam "managed the contracts with Plaintiffs", (*id.*); "ACS subcontracted billing functions to HCFS who in turn billed for Plaintiffs' Assisting RVUs", (*id.* at 22); THH "directed the activities of all its agents and subsidiaries, including the decision to not pay Plaintiffs … for RVUs … by supervising APCs", (*id.*); and THH "directed the activities of the subsidiary Defendants via apparent, actual, explicit, and/or implied authority", (*id.*). Plaintiffs refer to all of the Defendants acting "in concert" as the enterprise known as "TeamHealth" or the "Team Health Organization". (*Id.*).

Alternatively, Plaintiffs plead that the corporate veil of THH should be pierced. (*Id.*). THH allegedly "fails to observe corporate formalities in that its officers and shareholders hold the same role in its subsidiaries, all subsidiaries are on the same email system, all use the same letterhead, have the same principal place of business and office space, and use the same logo when communicating internally and with outside parties." (*Id.* at 22-23). THH "fails to sufficiently capitalize its subsidiaries and siphons funds from operating subsidiaries without formal intercompany agreements." (*Id.* at 23). THH "created an organizational structure wherein there would be an injustice of unfairness if Defendants are allowed to operate separately, under the control of their holding parent company, without recourse." (*Id.*).

### C. Plaintiffs' Counts against Defendants

#### 1. Count One – Breach of Contract/Bad Faith Breach of Contract (all Defendants except HCFS)

Plaintiffs entered into contracts with Defendants. (*Id*. at 27). These contracts were "broken" when the Defendants allegedly "failed to pay" Plaintiffs for RVUs generated in the supervision of APCs. (*Id*.). Ameriteam and THH allegedly "managed" the contracts and "dictated" that the RVUs generated by the supervision of APCs not be paid. (Doc. 1 at 27-28). In addition to the alleged breach of contracts, Plaintiffs claim that Defendants were also in bad faith, entitling Plaintiffs to "additional recovery under Louisiana Civil Code article 1997" including attorney's fees. (*Id*. at 28).

### 2.    Count Two – Unjust Enrichment (all Defendants)

Defendants allegedly "wrongfully retained a benefit from Plaintiffs." (*Id*. at 29). Defendants withheld bonus compensation owed to Plaintiffs for the services, supervision, and assistance that they provided. (*Id*.). Defendants allegedly "failed to provide the Plaintiffs and the putative class with payment for RVUs generated by physicians due to supervision of APCs, but retained the benefit of their services." (*Id*.). Plaintiffs claim that Defendants "knowingly, intentionally, and fraudulently failed to compensate Plaintiffs for the benefit conferred." (*Id*.).

### 3.    Count Three – RICO (all Defendants)

Plaintiffs allege that all Defendants were "at all relevant times" deemed a "person" under 18 U.S.C. § 1961(3) and "created an enterprise" that was used as a tool to carry out "the [s]cheme or pattern of racketeering activity." (*Id*. at 30). Their activities allegedly "affect interstate commerce" and are for the "common purpose of carrying out an ongoing criminal enterprise." (*Id*. at 31). "Specifically, the Defendants conspired and defrauded the Plaintiffs and the putative class by representing and contracting with Plaintiffs to pay physicians for RVUs generated by the physicians due to supervision of APCs in their Team Health contracts, but intentionally and uniformly refusing to do so." (*Id*. at 32). Also, the Defendants allegedly committed "multiple

6

related acts of wire and mail fraud." (*Id*.).    The alleged racketeering was "continuous" and "systematic". (*Id*. at 33).

### 4. Count Four – Declaratory Judgment, Injunctive Relief, and Accounting (all Defendants)

Plaintiffs seek a Declaratory Judgment determining the rights of the Plaintiffs and the class and injunctive relief affording an accounting, restitution, and future payment of all RVUs generated due to supervision of APCs. (Doc. 1 at 36).

In their "Prayer for Relief", Plaintiffs seek a judgment against Defendants: (A) "certifying the proposed Class under Rule 23 … and appointing Plaintiffs and their counsel to represent the Class"; (B) "that Defendants have engaged in the illegal conduct described" in the Complaint; (C) "awarding declaratory and injunctive relief as permitted by law or equity, including permanently enjoining Defendants from continuing their unlawful practices"; (D) "awarding Plaintiffs and the Class actual damages, punitive damages, and restitution"; (E) "ordering Defendants to engage in a corrective marketing campaign to current and future healthcare providers"; (F) "ordering an accounting of the RVUs generated by physicians due to supervision of APCs that Defendants refused to pay Louisiana physicians"; (G) "awarding attorney's fees and costs incurred in prosecuting this action"; (H) awarding "pre-judgment and post-judgment interest"; (I) awarding "all costs of this litigation"; and (J) awarding "all other relief". (*Id*. at 37-38).

## II.    THE PRESENT MOTION

### A.    Defendants' Argument

Defendants introduce their motion by explaining that Plaintiffs' putative class action is one of several "near-identical" actions brought in multiple states by the same counsel. (Doc. 19-1 at 1 (citing *Sanchez v. Team Health, LLC*, 18-21174 (S.D. Fla.); *Forward Momentum, LLC, v. Team*

*Health, Inc.*, 17-00346, 2019 WL 5616904 (N.D. Al. Oct. 30, 2019))).  THH moves to dismiss Plaintiffs' Class Action Complaint for lack of personal jurisdiction under Rule 12(b)(2).  (*Id*.).  "All Defendants"[2] move to dismiss Plaintiffs' Class Action Complaint for lack of standing under Rule 12(b)(1) and for failure to state a claim upon which relief can be granted under Rule 12(b)(6).  (*Id*.).

### 1.    Lack of Personal Jurisdiction over THH

Plaintiffs assert that jurisdiction is based on both diversity and federal question.  THH contends that "Plaintiffs' allegations are insufficient to establish personal jurisdiction over [THH] under either theory."  (*Id*. at 8).

### a.    *The RICO allegations are insufficient*.

THH argues that Plaintiffs' RICO claim is "wholly insubstantial"; therefore, the Court should dismiss all claims adverse to THH for lack of personal jurisdiction.  (*Id*. at 2 (citing *Atakapa Indian de Creole Nation v. Louisiana*, 943 F.3d 1004, 1006 (5th Cir. 2019); *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 941-42 (11th Cir. 1997))).  THH further argues that Plaintiffs "lumped" THH into its RICO theory without sufficient supporting factual allegations.  (*Id*.).  Specifically, the allegations against THH under RICO are "implausible" and should be dismissed for lack of personal jurisdiction because Plaintiffs failed to establish the following elements: (1) a RICO enterprise sufficiently separate from a RICO person; (2) any conduct or agreement by THH that amounts to racketeering, and (3) any damages to Plaintiffs proximately caused by any conduct by THH.  (*Id*. at 9).  For these reasons, THH contends that

---

[2] Although Defendants state that "all Defendants" move to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6), it appears that all Defendants move for dismissal under Rule 12(b)(6), but all Defendants *except* ACS move for dismissal under Rule 12(b)(1).

Plaintiffs cannot show personal jurisdiction under RICO and must show jurisdiction based on diversity.  (*Id*. (citing *Daimler AG v. Bauman,* 571 U.S. 117, 126-27 (2014))).

b.    *Louisiana's Long-Arm Statute does not reach THH*.

When jurisdiction is based on diversity of citizenship, Plaintiffs may obtain personal jurisdiction over non-resident defendants under the Louisiana long-arm statute, La. Rev. Stat. § 13:3201, along with the Louisiana State Constitution and the Due Process Clause of the Fourteenth Amendment  to the United States Constitution.  (*Id*. at 3 (citing *A&L Energy, Inc. v. Pegasus Group*, 2000-3255 (La. 6/29/01), 791 So.2d 1266, 1270)).  THH utilizes the "minimum contacts" standard to argue that THH's contacts with Louisiana are insufficient to establish personal jurisdiction.  (*Id*. at 9-10 (citing *Int. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945))).  "It is the plaintiff's initial burden to sufficiently allege a *prima facie* case of personal jurisdiction, and where the defendant submits non-conclusory affidavits to challenge personal jurisdiction, the burden shifts back to the plaintiff to produce evidence in support of personal jurisdiction."  (*Id*. at 10 (citing *Walden v. Fiore*, 571 U.S. 277, 283 (2014))).

THH argues that a "foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent."  (*Id*. (citing *Hargave v. Fibreboard Corp*., 710 F.2d 1154, 1159 (5th Cir. 1983))).  THH claims that Plaintiffs' allegations are too "sparse" and are "mere legal conclusions", which are insufficient to establish personal jurisdiction of THH, the parent company.  (*Id*. at 10-11).  THH relies upon the declaration of John Stair, Chief Operations Counsel and Assistant Secretary of THH, in support of its argument.  (*Id*. at 12 (citing Doc. 19-2)).  Based on Stair's declaration,

THH concludes that THH is "beyond this Court's reach." (*Id*. at 13 (citing *Int'l Energy Ventures Mgmt., LLC v. United Energy Group, Ltd*., 818 F.3d 193, 212-13 (5th Cir. 2016))). *See also Dalton v. R&W Marine, Inc*., 897 F.2d 1359 (5th Cir. 1990). (*Id*. at 13-14).

THH concludes that the "complete lack of any contacts between [THH] and … Louisiana evidenced by Stair's [d]eclaration, shows that [THH] lacks the necessary 'minimum contacts' with Louisiana." Therefore, THH seeks the dismissal of the claims against it. (*Id*. at 14).

### 2. Failure to State a Claim Upon Which Relief can be Granted

Defendants' motion pursuant to Rule 12(b)(6) is brought by all Defendants.

#### a. Breach of Contract

The elements of a breach of contract claim are: (1) the obligor undertook an obligation to perform; (2) the obligor failed to perform the obligation, resulting in a breach; and (3) the failure to perform resulted in damages to the obligor. (*Id*. at 15 (citing *Sanga v. Perdomo*, 14-609 (La.App. 5th Cir. 12/30/14), 167 So.3d 818, 822)).

Defendants argue that the contracts at issue contain language such that Defendant ACS retains the right to make determinations relating to the calculations of RVUs "in its sole discretion." (*Id*. at 16). When "an employer exercises rights reserved in the contract there can be no breach of contract." (*Id*. at 17 (citing *Kellermann v. Avaya, Inc*., 530 F. App'x 384, 389 (5th Cir. 2013))). Therefore, Defendants conclude that Plaintiffs' breach of contract claim fails because the allegations are contradicted by the plain language excerpted from the agreements, and Count 1 of Plaintiffs' Complaint should be dismissed. (*Id*.).

Second, Defendants argue that Plaintiffs lack standing[3] to bring a breach of contract claim

against Defendants who were not parties to the contracts.  (*Id.*).  Privity of contract is necessary

for a breach of contract claim.  (*Id.* (citing *Lester v. Wells Fargo Bank NA*, 15-2439, 2017 WL

1147495, *5 (W.D. La. Mar. 27, 2017); *Cooper v. Melacon*, No. CIV A. 05-277, 2007 WL

9711056, *3, n. 6 (M.D. La. Aug. 13, 2007))).  Plaintiffs assert their breach of contract claim

against all Defendants except HCFS; however, only "ACS is a party to the agreement." (*Id.* at 18).

Plaintiffs mistakenly treat all the Defendants as one enterprise.  (*Id.*).  To pierce the corporate veil

and subject Team Health to liability, Defendants argue that Plaintiffs "must allege facts … that

establish that each Defendant exerts extensive operational control over a subsidiary and that the

subsidiary essentially only exists to serve the parent's needs."  (*Id.* at 19 (citing *Town of

Haynesville, Inc. v. Entergy Corp.*, 42,019 (La.App. 2 Cir. 05/02/07), 956 So.2d 192, 197)).

Further, Defendants contend that Plaintiffs "have not pled any facts that establish an express or

implied agency relationship but instead rely on the alleged parent/subsidiary structure." (*Id.* at

20).

> b.    *Unjust Enrichment*

One of the elements of an unjust enrichment claim is that there is "no other remedy at law."

(*Id.* (citing *United Disaster Response, LLC v. Omni Pinnacle, LLC*, 569 F.Supp.2d 658, 666 (E.D.

La. 2008))).  Because Plaintiffs are alleging claims of breach of contract, a claim of unjust

enrichment is not available.  (*Id.*).  Also, because unjust enrichment is a "subsidiary claim, not an

alternative claim," Rule 8 does not permit "alternative and inconsistent pleading." (*Id.* at 21 (citing

*Zaveri v. Condor Petroleum Corp.*, 27 F.Supp.3d 695, 700-01 (W.D. La. Jun. 9, 2014))).

---

[3] Defendants' motion reflects that all Defendants except HCFS move the Court to dismiss Plaintiffs' breach of contract claim based on lack of standing under Rule 12(b)(1).  Yet, Defendants include their lack of standing argument within their argument under Rule 12(b)(6).

c.    RICO

Plaintiffs must plead three elements: (1) a person; (2) who engages in a pattern of racketeering activity; (3) that is connected to the acquisition, establishment, conduct, or control of an enterprise. (*Id*. at 22 (citing *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007))). Defendants argue that Plaintiffs' allegations fail as to all three elements. (*Id*.).

First, Plaintiffs must allege a "person" and an "enterprise" that are wholly distinct from one another. (*Id*.). A "person" is an "individual or entity capable of holding a legal or beneficial interest in property." (*Id*. (citing 18 U.S.C. § 1961(3))). An "enterprise" is an "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." (*Id*.). The two must be distinct. (*Id*. (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161-63 (2001))). Defendants contend that Plaintiffs' Complaint identifies all of the Defendants as both "persons" and members of the "enterprise". (*Id*.). Such pleading "requires" dismissal. (*Id*. at 23 (citing *In re Burzynski*, 989 F.2d 733, 743 (5th Cir. 1993); *Bishop v. Corbitt Marine Ways, Inc*., 802 F.2d 122, 123 (5th Cir. 1986))). Also, a parent and its subsidiaries are not distinct enough. (*Id*. (citing *Copperweld Corp. v. Indep. Tube Corp*., 467 U.S. 752, 771 (1984))). In summary, Defendants argue that Plaintiffs have not plead the allegations necessary to establish one of the Defendants is an "enterprise" that is distinct from the "person"; therefore, Plaintiffs' RICO claim must be dismissed. (*Id*. at 25).

Second, Plaintiffs have not alleged "actionable predicate acts" of racketeering activity. (*Id*.). When pleading a pattern of racketeering activity, Plaintiffs must plead facts establishing "two or more predicate criminal acts that are … related and … amount to or pose a threat of continued criminal activity." (*Id*. (citing *Abraham*, 480 F.3d at 355)). When the alleged RICO predicate acts are "part and parcel" of a single, lawful transaction, a pattern of racketeering has not

been shown.  (*Id.* (citing *Abraham*, 480 F.3d at 355)).  Plaintiffs have alleged mail and wire fraud. Defendants argue that Plaintiffs' allegation amount to nothing more than their breach of contract claim.  (*Id.*).  Plaintiffs are attempting to "transform" their breach of contract allegations into a pattern of racketeering.  (*Id.* at 26).

### d.      Fraud and Rule 9(b)

Allegations of fraud must meet the heightened pleading standard under Rule 9(b).  (*Id.* at 27).   Defendants argue that this applies to Plaintiffs' unjust enrichment claim and their RICO claim.  (*Id.* (citing *Breckenridge Enters., Inc. v. Avio Alternatives, LLC*, 08-1782, 2009 WL 1469808, *10 (N.D. Tex. May 27, 2009); *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997))).  Defendants argue detailed examples of how Plaintiffs' Complaint insufficiently plead fraud with particularity.  (*Id.* at 28-29).

### 3.      Lack of Standing under Rule 12(b)(1)[4]

Defendants, Team Health, THH, Ameriteam, and HCFS, to whom Defendants refer as the "non-signatory Defendants" assert that Plaintiffs' allegations are insufficient to establish standing to sue and to bring a RICO claim against them because Plaintiffs fail to allege how each of these Defendants proximately caused the specific damages of each Plaintiff.  (*Id.* at 30).  Defendants generally argue that Plaintiffs failed to show they have standing to assert a RICO claim against the "non-signatories", Team Health, THH, Ameriteam, and HCFS.  (*Id.*).

### 4.      Plaintiffs are not entitled to equitable relief.

Plaintiffs' fourth claim is for declaratory judgment, injunctive relief and accounting.  (*Id.*). Defendants argue that these claims are dependent upon Plaintiffs stating a claim for breach of

---

[4] Again, it is unclear from Defendants' motion which Defendants are asserting a motion under Rule 12(b)(1) based on lack of standing.

contract, RICO, unjust enrichment, or fraud, which Defendants contend that Plaintiffs did not do. (*Id*.).  Defendants further contend that these claims are "redundant" and "duplicative" of Plaintiffs' other claims.  (*Id*. at 31).  Additionally, attorney's fees are not available under the Declaratory Judgment Act.  (*Id*. (citing *Self-Ins. Inst. of Am., Inc. v. Korioth*, 53 F.3d 694, 697 (5th Cir. 1995))).

### B.     Plaintiffs' Argument

By way of introduction, Plaintiffs argue that the "arguments made by Defendants throughout their brief do not reflect [Fifth] Circuit and Louisiana precedent, nor do they exhibit a good faith reading of Plaintiffs' Complaint."  (Doc. 28 at 2).  Plaintiffs argue that their Complaint "contains an in-depth description of the many ways in which the Team Health Organization operates as one entity to breach the physician contracts, unjustly enrich the Defendants, and perpetrate wire and mail fraud throughout the [S]tate of Louisiana."  (*Id*.).  Plaintiffs ask that if "part or all" of the Complaint is dismissed, that it be dismissed "without prejudice" and that Plaintiffs be given the opportunity to amend.  (*Id*. at n. 1).

### 1.     Personal Jurisdiction over THH

Plaintiffs argue that they "need only present a *prima facie* case of personal jurisdiction." (*Id*. at 7 (citing *In re Chinese Manufactured Drywall Prods. Liab. Litig*., 894 F.Supp.2d 819, 836 (E.D. La. Sept. 4, 2012))).  "Based on the Complaint and written materials supplied by the parties," Plaintiffs suggest that the "preponderance of the evidence" suggests there is personal jurisdiction over THH.  (*Id*.).

#### a.     *Long-arm jurisdiction*

Plaintiffs admit that general jurisdiction does not exist over THH; however, Plaintiffs argue that there is "more than enough evidence to find specific jurisdiction."  (*Id*. at 8).  Plaintiffs rely

upon the declaration of Stephanie Petelos, administrative assistant at the law firm of Wiggins, Childs, Pantazis, Fisher, and Goldbarb LLC, in support of its argument on specific jurisdiction. (Doc. 28-1). Plaintiffs also point to declarations from other litigation regarding THH's contacts as well as THH's registration with the Louisiana Secretary of State to argue specific jurisdiction. (Doc. 28 at 8-9). *See also Mayeaux v. DRV, LLC*, No. 15-949, 2016 US Dist. LEXIS 2600, *2 (W.D. La. Jan. 7, 2016). (*Id.* at 9).

b.    *Single business enterprise*

Plaintiffs also argue the single business enterprise theory as a means of obtaining personal jurisdiction over THH. (*Id.* at 10 (citing *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, No. 09-02047, 2017 US Dist. LEXIS 60914, *65-66 (E.D. La. Apr. 21, 2017))). Plaintiffs contend that their Complaint addresses all factors in the single business enterprise theory. (*Id.* at 11). For example, Plaintiffs argue that THH created the corporate structure of the Team Health Organization; THH failed to observe corporate formalities; all subsidiaries are on the same email system and letterhead; all of the Defendants do business as "Team Health"; and all of the Defendants use the same internal database. (*Id.* (citing Doc. 1)). Plaintiffs also point to "previous testimony" of Stair as "further proof that the Team Health Organization, including THH, operates as one entity." (*Id.* at 11-12). In fact, Plaintiffs state that there is "no distinction in this enterprise whatsoever," and that Stair has "admitted that the Team Health Organization operates as a single enterprise." (*Id.* at 12).

After setting forth pages of "facts" related to the organization and business of the "Team Health Organization", Plaintiffs argue that "it is clear that THH is the nucleus to all of the Team Health [O]rganization's activities." (*Id.* at 14). Defendants' argument that Plaintiffs "invented" this theory of a collective identity "strays far from the truth." (*Id.*). Plaintiffs argue, "As Mr. Stair

15

stated in his deposition, 'somebody always answers to somebody'… [a]nd that somebody in the Team Health Organization is THH." (*Id*. at 15).

### c.  Piercing the corporate veil

In addition to specific jurisdiction and the single business enterprise theory, Plaintiffs argue that the Court should pierce the corporate veil based on the same arguments made in support of the single enterprise theory. (*Id*. at 15-16 (quoting *In re Chinese Manufactured Drywall Prods. Liab. Litig*., 894 F.Supp.2d 819, 868-69 (E.D. La. 2012)).

### d.  Implied and apparent authority and agency

Plaintiffs claim that yet "another reason to find personal jurisdiction over THH" is because the "other named Defendants in this lawsuit each operated with implied and/or apparent authority, and their actions are therefore attributable to the parent company, THH." (*Id*. at 16-17). Also, Plaintiffs argue that these "other named Defendants acted as agents" of THH. (*Id*. at 17 (quoting *In re Chinese Manufactured Drywall*, 894 F.Supp.2d at 868-69)). Essentially, Plaintiffs argue that the Defendants other than ACS authorized ACS to enter into the contracts with Plaintiffs and for ACS to act as their agent. (*Id*.).

### e.  Personal jurisdiction under RICO

Plaintiffs' final basis for personal jurisdiction over THH is under RICO. Plaintiffs claim that Defendants "ignore[d] important allegations within Plaintiffs' Complaint" that established "RICO jurisdiction". (*Id*. at 18).

Plaintiffs also argue that the "doctrine of pendent personal jurisdiction" comes "into play" because jurisdiction is established under RICO, and it is "unnecessary to consider Louisiana's

long-arm statute." (*Id*. (citing *ESAB Grp., Inc. v. Centricut, Inc*., 126 F.3d 617, 628 (4th Cir. 1997); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2nd Cir. 1993), cert. denied 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994))).  Since Plaintiffs "adequately pled RICO allegations" against the Defendants, then RICO "provides another basis for personal jurisdiction." (*Id*. at 19).

## 2. Plaintiffs stated a claim against Defendants.

### a. Breach of contract

Plaintiffs first argue that Defendants relied upon a section of the contract at issue that "has no bearing on the obligation to provide payment for all RVUs generated." (*Id*.).  Alternatively, Plaintiffs argue that the contract is ambiguous and, therefore, should be left to interpretation by the jury.  Also, Defendants redacted a portion of the contract, and when the language is considered in the context of the entire contract, it does not apply. (*Id*.).

Second, signatures of all Defendants are not necessary under theories of implied or apparent authority and agency. (*Id*. at 21 (citing *Arthur Andersen LLP v. Carlisle*, 556 US 624, 631, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009))).  Plaintiffs contend that even if ACS is the only signatory to the contract, the other Defendants, via actual and/or apparent authority, were also parties to the contract. (*Id*. (citing *Action Marine v. M/V Norseman*, No. 96-3945, 1998 U.S. Dist. LEXIS 11143, *11 (E.D. La. July 20, 1998))).

### b. RICO

Plaintiffs allege and argue that Defendants acted in concert to create a criminal enterprise "(the Organization)", to defraud Plaintiffs of large sums of money, in purported violation of Section 1962(c) of RICO. (*Id*. at 22).  Plaintiffs argue that the "essential elements" of such a RICO claim are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." (*Id*.

(citing *Johnson v. Arista Records, Inc*., No. 90-1224, 1991 U.S. Dist. LEXIS 17002, *2 (M.D. La. Aug. 13, 1991))).  The Defendants are the "persons".  (*Id*.).  They are "associated together" to carry out "the enterprise", Team Health Organization.  (*Id*).  They "conspired and defrauded" Plaintiffs by contracting to pay for Assisted RVUs, but "intentionally and uniformly" refused to do so.  (*Id*. at 22-23).  They also allegedly committed wire and mail fraud.  (*Id*. at 23).  The alleged racketeering acts occurred for the "past six years".  (*Id*.).  Plaintiffs conclude that they "have adequately and specifically alleged Defendants' multiple and continued violations of § 1962(c) of the RICO Act as required to sustain their claim under Rule 8 and Rule 9(b).  (*Id*.).

Additionally, Plaintiffs argue that they plead a RICO "association-in-fact" enterprise.  (*Id*.).  A "criminal enterprise" is defined by 18 U.S.C. § 1961(4), as including "organizations, such as partnerships, corporations, associations and other legal entities, as well as any group of individuals 'associated in fact although not a legal entity.'  An enterprise may be either a legitimate or illegitimate business, so long as it comprises an 'ongoing organization, formal or informal [with] … various associates functioning as a continuing unit."  (*Id*. at 23-24 (citing *Guidry v. Bank of LaPlace*, 740 F.Supp. 1208, 1212 (E.D. La. June 8, 1990))).  Plaintiffs argue that even though a Defendant may not be both a person and an enterprise, "a Defendant may be both a person and a part of an enterprise."  (*Id*. at 24).  The individual is distinct from the organizational entity.  (*Id*. (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 447 (5th Cir. 2000))).  Plaintiffs argue that their Complaint alleges adequate facts to plead a RICO enterprise – "at its core, the enterprise consists of the named Defendants operating in accord and in concert, to perpetuate the systematic, uniform, and routine refusal to pay physicians for Assisting RVUs; the Defendants worked together to create the enterprise known as Team Health or the Team Health Organization to defraud Louisiana emergency room physicians."  (*Id*.).

18

Finally, Plaintiffs argue that the Defendants are "distinct enough" to establish a RICO enterprise under Section 1962(c).  (*Id*. at 24-25).  Section 1962(c) of RICO "requires only some separate and distinct existence for the person and the enterprise, and a subsidiary corporation is a legal entity distinct from its parent."  (*Id*. at 25 (citing *Haroco, Inc. v. Am. Nat'l Bank &Tr. Co*., 747 F.2d 384, 402 (7th Cir. 1984))).  Plaintiffs argue that they plead that the Defendants acted as distinct persons in concert with one another to effectuate the criminal enterprise.  (*Id*.).  Plaintiffs contend that Defendants are "distinct enough" to be separate persons and form the Team Health Organization criminal enterprise, and Defendants' motion should be denied.  (*Id*.).

### C.    Defendants' Reply

Defendants summarize their argument in response to Plaintiffs' opposition as follows:

> [THH] should be dismissed for lack of personal jurisdiction because Plaintiffs have failed to plead sufficient minimum contacts with Louisiana and applied the wrong law to attempt to reach it through imputed contacts.  The remaining claims should be dismissed under Rule 12(b)(1) for lack of standing to sue the non-signatories to the contracts, and under Rule 12(b)(6) for failure to state a claim, including for failure to plead fraud with particularity under Rule 9(b), because Plaintiffs' allegations lack sufficient factual allegations to support their claims....

(Doc. 32 at 1).

### 1.    Personal Jurisdiction

Defendants argue that Plaintiffs concede that THH is not subject to general personal jurisdiction in Louisiana.  (*Id*.).  Defendants maintain that a non-resident such as THH does not consent to personal jurisdiction by registering to do business and appointing an agent for service of process, as Plaintiffs suggest.  (*Id*.).  THH offers a supplemental declaration of Stair to provide context for the declarations and deposition testimony of Stair offered by Plaintiffs.  (*Id*. at 2 (citing Doc. 32-1)).  THH maintains that it does not have a principal business establishment and does not do business in Louisiana.  (*Id*.).

Defendants argue that Plaintiffs' arguments of the single business enterprise theory, piercing the corporate veil, and implied and apparent authority and agency theories are faulty because they lack a proper basis. (*Id*. at 3). In fact, Defendants contend that the law of the State of Louisiana does not apply. Defendants argue that the law of the "state of incorporation" applies. (*Id*.). Here, THH was incorporated in Delaware. (*Id*. at 4). Therefore, Defendants argue that Delaware law should apply. (*Id*.). Defendants briefly argue that Delaware courts "only disregard the corporate form in the 'exceptional case'" and Plaintiffs' allegations are insufficient to "overcome Delaware law's high bar." (*Id*.).

Even under Louisiana law, Defendants maintain that the Court does not have personal jurisdiction over THH. Simply because THH's subsidiary companies do business in Louisiana, this does not subject THH to personal jurisdiction. (*Id*. at 5). Defendants characterize Plaintiffs' arguments as "merely parroting the factors" that are "entirely benign". (*Id*.). Defendants argue that its corporate structure is "perfectly consistent with legitimate, efficient business operations, such as common control, common employees, officers, and directors, shared offices, and some form of centralized accounting." (*Id*. (citing *Bona Fide Demolition and Recovery, LLC v. Crosby Const. Co. of Louisiana, Inc*., 690 F.Supp.2d 435, 445 (E.D. La. Feb. 1, 2010))).

Lastly, regarding personal jurisdiction over THH, Defendants argue that Plaintiffs' RICO claim is "wholly insubstantial" and "so implausible" that it cannot serve to establish personal jurisdiction. (*Id*. at 6).

## 2.    Breach of Contract

Defendants argued in their motion that Plaintiffs failed to state a claim for breach of contract in their Complaint. (*Id*. at 6). Defendants argue that in making this argument, they relied upon the language from the contract that Plaintiffs plead in their Complaint. (*Id*.). In opposition,

Plaintiffs argued that Defendants failed to provide the full contract and inappropriately quoted the contract out of context. (*Id*.). In reply, Defendants argue that Plaintiffs cannot cure their defective pleading of a breach of contract claim by blaming Defendants for using language that Plaintiffs, themselves, quoted in their Complaint and that Plaintiffs cannot fix their error by quoting new language from the contract in their opposition. (*Id*.).

Further, Defendants maintain that non-signatories to the contract cannot be liable to Plaintiffs. Plaintiffs' argument on this issue "must fail" because Plaintiffs' "various imputed liability theories" do not apply as addressed in conjunction with personal jurisdiction. (*Id*. at 7). Defendants conclude that Plaintiffs' allegations are insufficient to surmount and disregard Defendants' corporate structure; therefore, the breach of contract claim against the non-signatories must fail. (*Id*.).

### 3.    RICO

Defendants argue that Plaintiffs allege that the five Defendants are "persons" under RICO and that the same five Defendants make up the "enterprise" under RICO. (*Id*.). Defendants argue that the Fifth Circuit has "time and again" rejected RICO claims like this. (*Id*. at 8).

Additionally, Defendants argue that a parent company and its wholly owned subsidiary are not, without more, sufficiently distinct for RICO. (*Id*.). Defendants argue: "Plaintiffs do not plead anything other than a normal parent-subsidiary relationship between [THH] and the other entities; they label regular business activities, like entering into contracts, as 'racketeering'; and they try to create the impression a separate enterprise existed by referring to Defendants collectively as the 'Team Health Organization'". (*Id*. at 9). Defendants contend that Plaintiffs' "rhetorical device" was rejected in *ISystems v. Spark Networks, Ltd*., 2012 WL 3101672 (5th Cir. 2012). (*Id*.).

### 4.    Unjust Enrichment and Declaratory Judgment Claims

Because Plaintiffs "fail[ed] to address" Defendants' arguments regarding the dismissal of Plaintiffs' unjust enrichment and declaratory judgment claims, Defendants argue that those claims have been abandoned and should be dismissed. (*Id.*).

### D.    Defendants' Supplemental Authority

Once all parties completed briefing on Defendants' motion, a ruling was issued by the Southern District of Florida on May 18, 2020. Defendants claim that this other matter was a "similar proceeding" against the "same defendants" on the "same issues" as presented in this matter. (Doc. 33 at 1). There, the Southern District of Florida granted the defendants' motion to dismiss under Rule 12(b)(6) for breach of contract, unjust enrichment, unfair trade practices, and RICO. (*Id.*). Because there was no plausible RICO claim, there also was no personal jurisdiction. (*Id.* at 2). Defendants moved for, (Doc. 33), and were granted, (Doc. 34), leave of court to supplement their pending motion with this "supplemental authority". *See Sanchez v. Team Health, LLC*, No. 18-21174 (S.D. Fla. May 18, 2020), (Doc. 33-1).

## III.    APPLICABLE STANDARDS OF LAW

### A.    Rule 12(b)(1) Standard

Concerning the standard for Rule 12(b)(1) motions, the Fifth Circuit has explained:

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States*, 899 F.Supp. 305, 307 (E.D. Tex. 1995). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing

any attack on the merits. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)....

In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### B.     Rule 12(b)(2) Standard

Rule 12(b)(2) allows a party to move to dismiss for lack of personal jurisdiction. "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N'Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Laplan*, 686 F.2d 276, 280 (5th Cir. 1982)). When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction. *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Buillion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citations omitted)). "Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *Id.* ("Proof by preponderance of the evidence is not required."). However, in assessing whether the plaintiff has presented a *prima facie* case of personal jurisdiction, the court "will not 'credit conclusory allegations, even if uncontroverted.'" *Sealed Appellant 1 v. Sealed Appellee 1*, 625 Fed.Appx. 628, 631 (5th Cir. 2015) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001)). The court may consider "affidavits, interrogatories,

depositions, oral testimony, or any combination of the recognized methods of discovery." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)); *cf.* Fed. R. Civ. P. 12(d) (listing only motions under Rule 12(b)(6) and 12(c) as requiring conversion to summary judgment if evaluated on matters outside the pleadings).

### C.    Rule 12(b)(6) Standard

In *Johnson v. City of Shelby, Miss.*, the Supreme Court explained, "Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." 135 S. Ct.346, 347 (2014) (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim.  'Asking for [such] plausible grounds to infer [the element of a claim *does not impose a probability requirement* at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed].'

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the 'assumption of truth' to conclusions, factual allegations remain so entitled.  Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556.  This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim.  The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds

upon which it is based. The standard is met by the 'reasonable inference' the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a 'reasonable expectation' that 'discovery will reveal relevant evidence of each element of the claim.' *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

The Fifth Circuit further explained that all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502-03 (5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" "has been asserted". *Id.* at 503.

## IV. DISCUSSION

### A. Personal Jurisdiction over THH under Rule 12(b)(2)

#### 1. Long-arm jurisdiction

In a diversity action, a federal district court may exercise personal jurisdiction over a defendant to the extent permitted by the applicable state law. Fed. R. Civ. P. 4(e)(1); *Panda Brandywine v. Potomac*, 253 F.3d 865, 868 (5th Cir. 2001). Pursuant to La. Rev. Stat. § 13:3201, Louisiana's long-arm statute, courts are permitted to exercise personal jurisdiction over non-residents consistent with the Louisiana State Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *A & L Energy, Inc. v. Pegasus Group*, 791 So.2d 1266, 1270 (La. 2001). A court's exercise of personal jurisdiction over a non-resident defendant comports with the due process clause when (1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with that state, and (2) the court's exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. at 316.

The Supreme Court has recognized two types of personal jurisdiction: "general" and "specific" jurisdiction. *Bristol-Myers-Squibb Co. v. Superior Court of Cal.*, ⸺ U.S. ⸺, 137 S.Ct. 1773, 1779, 198 L.Ed.2d 395 (2017) (citing *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011)). "Specific" jurisdiction, sometimes referred to as "case-linked" or "conduct-linked" jurisdiction, requires an "affiliatio[n] between the forum and the underlying controversy." *Goodyear*, 131 S.Ct. at 2851. "[S]pecific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (citation omitted). By contrast, "general" or "all purpose" jurisdiction permits a court to assert jurisdiction over a defendant based on forum connections unrelated to the underlying suit. *Id.*

In deciding whether there is personal jurisdiction, the Court should first determine whether the connection between the forum and the circumstances giving rise to the suit can justify the exercise of specific jurisdiction. *Daimler*, 134 S.Ct. at 746, n.20.

### a.   Specific jurisdiction

The Fifth Circuit has articulated a three-step analysis for the specific jurisdiction inquiry. *Nuovo Pignone*, 310 F.3d at 378. First, the Court must determine "whether the defendant has minimum contacts with the forum state." *Id.* Second, the Court considers "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts." *Id.* Third, "[i]f the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth*, 472 F.3d at 271.

A court may find specific jurisdiction when a nonresident defendant has "purposefully directed" his activities at residents of the forum. *Trois v. Apple Tree Auction*, 882 F.3d 485, 489

(5th Cir. 2018) (citing *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003) (citing *Burger King*, 471 U.S. at 462, 105 S.Ct. 2174) ). "In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers-Squibb*, 137 S.Ct. at 1780 (quoting *Goodyear*, 131 S.Ct. at 2846). The suit must "aris[e] out of or relat[e] to the defendant's contacts with the *forum*." *Bristol-Myers-Squibb*, 137 S.Ct. at 1780 (quoting *Daimler*, 134 S.Ct. at 754). "For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Bristol-Myers-Squibb Co. v. Superior Court of Cal.*, —— U.S. ——, 137 S.Ct. 1773, 1780, 198 L.Ed.2d 395 (2017) (quoting *Goodyear*, 131 S.Ct. at 2846). Thus, the primary focus of a personal jurisdiction inquiry is the defendant's relationship to the forum state. *Bristol-Myers-Squibb*, 137 S.Ct. at 1779 (citing *Walden v. Fiore*, 571 U.S. 277, 134 S.Ct. 1115, 1121–23, 188 L.Ed.2d 12 (2014) ).

Because "specific personal jurisdiction is a claim-specific inquiry," *Trois*, 882 F.3d at 489 (quoting *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) ), "only those acts which relate to the formation of the contract and the subsequent breach are relevant," *Trois*, 882 F.3d at 489 (quoting *Religious Tech. Ctr.*, 339 F.3d at 375). This includes "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Trois*, 882 F.3d at 489 (citing *Burger King*, 471 U.S. at 479, 105 S.Ct. 2174). However, a defendant's contract with an out-of-state party alone does not automatically establish sufficient minimum contracts in the other party's forum. *Gulf Coast Bank & Trust Co. v. Designed Conveyor Systems, L.L.C.*, 7171 F. App'x 394, 399 (5th Cir. 2017) (citing *Pervasive Software Inc. v. Lexware*

*GmbH & Co. KG*, 688 F.3d 214, 222–23 (5th Cir. 2014) (quoting *Burger King*, 471 U.S. at 478, 105 S.Ct. 2174) ).

    *b.*    *Analysis*

Plaintiffs admit that general jurisdiction does not exist over THH; however, Plaintiffs argue that this Court has specific jurisdiction over THH. (Doc. 28 at 8). The Court should first determine whether the connection between the forum and the circumstances giving rise to the suit can justify the exercise of specific jurisdiction. *See Daimler*, 134 S.Ct. at 746, n.20.

Plaintiffs argue that since 2016, THH has been registered to do business in the State of Louisiana. (Doc. 28 at 8 (citing Doc. 28-1 and its attachments)). The Secretary of State for the State of Louisiana's commercial listing for THH reflects that THH has a mailing address in Baton Rouge, Louisiana; a principal business office address in Baton Rouge, Louisiana; a registered office in Baton Rouge, Louisiana; and a principal business establishment in Baton Rouge, Louisiana. (Doc. 28-2 at 2). Also, THH has a registered agent for service of process in Baton Rouge, Louisiana. (*Id.*). While Plaintiffs agree that THH conducts all business from its offices in Tennessee, Plaintiffs rely on the Louisiana Secretary of State listing to argue that THH has specifically availed itself to the jurisdiction of Louisiana so that it can direct, control, and coordinate all of the Team Health affiliated practice groups with the State of Louisiana. (Doc. 28 at 9).

Plaintiffs rely upon *Mayeaux v. DRV, LLC*, 2016 WL 112704 (W.D. La. Jan. 8, 2016), where the Western District Court found specific personal jurisdiction. However, there, the plaintiffs established that the defendants "sold its products in Louisiana through an authorized dealer." (*Id.* at *1). In fact, the court called the purchase of the trailer at issue from a Louisiana

dealer a "critical fact". (*Id*.). In addition to the "critical fact", the defendant was registered to do business in Louisiana and designated an agent for service of process in Louisiana. (*Id*.). After identifying these minimum contacts, the court found that the defendant's decision to allow its products to be sold in Louisiana through an authorized dealer evidenced that the plaintiff's claims arose out of those minimum contacts. (*Id*.). Lastly, the court found that jurisdiction was not unfair or unreasonable given the defendant's marketing in Louisiana *and* designation of an agent for service of process in Louisiana. (*Id*.).

Here, Plaintiffs' argument that this Court has specific jurisdiction over THH mainly rests on their assertion that THH's designation of an address for multiple purposes in the State of Louisiana avails THH of the privilege of conducting business in Louisiana. (Doc. 28 at 9). Plaintiffs argue that violations of the affiliated provider group contracts which THH allegedly directed, controlled and coordinated from Tennessee, evidences that THH should have reasonably anticipated being sued in Louisiana. (Doc. 28 at 9-10). However, the only actions that can support specific jurisdiction over THH are those relating to the agreements to provide RVU's, the decision to breach those agreements, and the failure to pay in accordance with those agreements. *See Burger King*, 471 U.S. at 479, 105 S.Ct. 2174; *Trois*, 882 F.3d at 489. Plaintiffs do not tie these actions to Louisiana, only Tennessee.

In contrast, Defendants offered the declaration of Stair, evidencing that THH did not conduct any business in Louisiana throughout the relevant time period, THH did not contract with any of the Plaintiffs, and THH did not direct or control the compensation of the Plaintiffs. (Doc. 19-2 at 3-5). Defendants argue that "there are not sufficient contacts with a forum state when [the defendant] does not have a physical presence in the state; it did not conduct business in the state; and the contract underlying the business transaction at issue in the lawsuit was not signed in the

state and did not call for performance in the state."  (Doc. 19-1 at 13 (citing *International Energy Ventures Management, LLC v. United Energy Group*, 818 F.3d 193, 212 (5th Cir. 2016))).

Also, Defendants point to *Dalton v. R&W Marine, Inc*., 897 F.2d 1359, 1363 (5th Cir. 1990), where jurisdiction did not exist over a parent company because the parent company was responsible for general policy, followed corporate formalities, made its subsidiaries responsible for daily operations, and allowed each subsidiary to keep its records and accounts in separate books.  Therefore, the court concluded that there was no basis upon which to conclude that the company purposefully availed itself of contacts of a quality or nature that would support subjecting them to the jurisdiction of a Louisiana forum.  (Doc. 19-1 at 13-14 (citing *Dalton, id*.)).

At the heart of Plaintiffs' Class Action Complaint is the contractual obligation of the Defendants to provide RVUs, which they allegedly failed to do.  In arguing specific jurisdiction, neither Plaintiffs, nor Defendants direct the Court to a contract or agreement entered into by THH in Louisiana or tying THH contractually to Louisiana and this matter.  Plaintiffs do not indicate that personal jurisdiction over THH is related to THH's actions touching the forum and which are sufficiently related to the dispute in this case. Plaintiffs have not produced evidence indicating that the contracts or agreements were performed in Louisiana, that the contracts or agreements were executed in Louisiana, and that at least some of the negotiations of the contracts or agreements occurred in Louisiana *and involved THH*.[5]

This Court is bound to resolve any factual dispute in favor of Plaintiffs because this Court rules on Defendants' motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing. *See generally Herman*, 730 F.3d at 464. The Court must accept as true the

---

[5] Although Plaintiffs allege in their Complaint that Plaintiffs saw patients and supervised PAs and NPs in Louisiana, in accordance with the terms of the contracts and in anticipation of earning RVUs, it was incumbent upon Plaintiffs to produce some evidence of this with regard to THH in response to Defendants' motion under Rule 12(b)(2).

uncontroverted allegations in Plaintiffs' Complaint and resolve in favor of Plaintiffs any factual conflicts. *See, e.g., id.* However, Plaintiffs have made an insufficient showing that THH reached out to the forum state and purposefully directed activities at the forum. *See, e.g., Trois*, 882 F.3d at 489. THH, therefore, did not have "minimum contacts" with Louisiana based on this record and Plaintiffs' showing, and the cause of action did not arise from THH's forum-related contacts. *Nuovo Pignone*, 310 F.3d at 378. The Court concludes that Plaintiffs have not met their *prima facie* burden of demonstrating personal jurisdiction over THH based on specific personal jurisdiction. *See, e.g., Herman*, 730 F.3d at 464. The listing from the Louisiana Secretary of State, standing alone, is insufficient to establish specific personal jurisdiction over THH. *See, e.g., Burger King*, 471 U.S. at 478, 105 S.Ct. 2174.

The Court now turns to whether Plaintiffs have established personal jurisdiction over THH based on other grounds.

### 2.    RICO

RICO's Venue and Process section provides in relevant part:

(a) Any civil action or proceeding under this chapter against any person *may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.*

(b) In any action under [civil RICO] in any district court of the United States *in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.*

....

(d) All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

18 U.S.C.A. § 1965(a), (b), (d) (emphasis added). While most courts agree that § 1965 provides for nationwide service of process, courts have differed as to whether such process is attributable

to § 1965(b) or (d). *Rolls–Royce Corp. v. Heros, Inc.,* 576 F.Supp.2d 765, 779 (N.D. Tex. Mar. 25, 2008). Regardless, § 1965 places limitations on nationwide service of process that do not exist in other nationwide service of process statutes. *Id.* (citing *Hawkins v. Upjohn Co.,* 890 F.Supp. 601, 606 (E.D. Tex. Sept. 29, 1994)). Most notably, the plaintiff must establish personal jurisdiction over at least one defendant under § 1965(a) before other nonresident defendants become subject to nationwide service of process. *Id.* (citing *PT United Can Co. v. Crown Cork & Seal Co.,* 138 F.3d 65, 71 (2d Cir. 1998); *Hawkins,* 890 F.Supp. at 606).

As Plaintiffs point out in their opposition to Defendants' motion, "Defendants agree that RICO provides for nationwide service of process to exercise personal jurisdiction over a foreign defendant like THH." (Doc. 28 at 18).  It appears that Defendants do not dispute that at least one RICO defendant is subject to personal jurisdiction in Louisiana because Defendants only argue a lack of personal jurisdiction as to THH and do not offer evidence that the other Defendants are not subject to personal jurisdiction in Louisiana, thereby implying that personal jurisdiction exists as to the other Defendants.  Further, as set forth above, THH has a mailing address in Baton Rouge, Louisiana, a principal business office address in Baton Rouge, Louisiana, a registered office Baton Rouge, Louisiana, and a principal business establishment in Baton Rouge, Louisiana.  (Doc. 28-2 at 2).  Also, THH has a registered agent for service of process in Baton Rouge, Louisiana.  (*Id.*). Because the RICO action against all Defendants except for THH is properly before this Court and because THH has a registered agent and office in Louisiana, § 1965(a) and (b) are triggered to give the Court jurisdiction over THH, which is part of the alleged RICO enterprise, along with the other "Team Health Organization" Defendants.

Moreover, the Court is persuaded that in this case the ends of justice require that all of the RICO Defendants be brought before this Court. The scheme that Plaintiffs allege is one that took

place throughout the State of Louisiana as it has in multiple other states as well. Neither justice, nor judicial economy would be served by forcing the Plaintiffs to fracture their claims across multiple forums to reach the various Defendants. The various Plaintiffs worked across the State of Louisiana and did not necessarily work at the same Team Health facilities, but the common factor in all of their claims is that Defendants allegedly contracted with all of them to provide RVUs for their work and the work of their NPs and PAs which Defendants allegedly did not pay. The potential prejudice to Plaintiffs in having their claims against the Defendants split up far outweighs any potential inconvenience to the Team Health Defendants in having to defend this lawsuit in Louisiana.

Defendants rely on their argument that Plaintiffs failed to state a claim upon which relief may be granted under Rule 12(b)(6) to show that Plaintiffs' RICO claims are "wholly insubstantial" and  should be dismissed for lack of jurisdiction.  (Doc. 19-1 at 8 (citing *Atakapa Indian de Creole Nation v. Louisiana*, 943 F.3d 1004 (5th Cir. 2019))).  In *Atakapa*, the Fifth Circuit stated:

> Some claims are 'so insubstantial, implausible, ... or otherwise completely devoid of merit as not to involve a federal controversy.' *See Oneida Indian Nation of N.Y. v. Oneida Cty.*, 414 U.S. 661, 666, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974). Federal courts lack power to entertain these 'wholly insubstantial and frivolous' claims. *Southpark Square*, 565 F.2d at 343–44. Determining whether a claim is 'wholly insubstantial and frivolous' requires asking whether it is 'obviously without merit' or whether the claim's 'unsoundness so clearly results from the previous decisions of (the Supreme Court) as to foreclose the subject.' *Id.* at 342.

*Atakapa*, 943 F.3d at 1006.

For the reasons set forth below in the Court's analysis of Defendants' motion under Rule 12(b)(6), this Court does not find itself in the same position as the court in *Atakapa*.[6]  This is not

---

[6] It is clear that the pleadings in *Atakapa* reflected "exotic claims" that struck the court as "bizarre".  *Atakapa*, 943 F.3d at 1006.

a matter where Plaintiffs' claims are "obviously without merit", and, as one can easily glean from the other matters pending against the Team Health Defendants across the nation, the "unsoundness" of Plaintiffs' claims is clearly not a foreclosed subject.

For the foregoing reasons, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction over Defendant THH is denied.  As set forth immediately below, the Court will exercise pendant personal jurisdiction over Plaintiffs' non-RICO claims against THH.

### 3.    Pendant Personal Jurisdiction

 "RICO has its own venue and jurisdiction provisions which provide for nationwide service of process so long as one of the defendants is properly before the court." *David v. Signal Int'l,* 588 F.Supp.2d 718, 723 (E.D. La. Dec. 8, 2008). Personal jurisdiction has been established over THH for the purposes of the RICO claim; therefore, this Court has personal jurisdiction over THH for the purposes of the other claims in the Complaint that arise out of the same actionable conduct.

The Northern District of Texas explained the doctrine of pendent personal jurisdiction in *Rolls-Royce Corp. v. Heroes, Inc.:*

> Pendent personal jurisdiction, like its better known cousin, supplemental subject matter jurisdiction, exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim.

576 F.Supp.2d 765, 783 (N.D. Tex. Mar. 25, 2008)(citing *United States v. Botefur,* 309 F.3d 1263, 1272-73 (10th Cir. 2002)); *see also* 4A Wright & Miller § 106.7(explaining pendent personal jurisdiction: "a district court has discretion to exercise personal jurisdiction over a claim that it ordinarily lacks jurisdiction over only when that claim arises out of the same common nucleus of operative fact as does a claim that is within the *in personam* jurisdiction power of the court"). "'In essence, once a district court has personal jurisdiction over a defendant for one claim, it may piggyback onto that claim other claims which arise from the same facts as the claim over which it

has proper personal jurisdiction.'" *Rolls Royce,* 576 F.Supp.2d at 783 (quoting *Botefur,* 309 F.3d at 1272)(internal quotations omitted).

Several district courts within the Fifth Circuit have exercised discretionary pendent jurisdiction over non-RICO claims where the district court found it had jurisdiction over the RICO claim and the non-RICO claims arose from the same nucleus of operative facts. *See Rolls-Royce,* 576 F.Supp.2d at 784; *Oblio Telecom, Inc. v. Patel,* 2008 WL 4936488 at *5 (N.D. Tex. Nov 18, 2008)(holding that where the state law claims arose from the same nucleus of operative fact as the RICO claims, the court could exercise pendent personal jurisdiction over the state law claims); *David,* 588 F.Supp.2d at 724 ("The Court in its discretion also will exercise pendent personal jurisdiction over the Global Defendants with respect to the non-RICO claims.").

The exercise of pendent personal jurisdiction is discretionary, not automatic. *See Rolls-Royce,* 576 F.Supp.2d at 784 ("[I]f [plaintiff's] remaining claims arise out of the same nucleus of operative fact as its RICO claims it is *within the court's discretion* to exercise pendent personal jurisdiction over them.")(emphasis added). Plaintiffs' non-RICO claims arise from the same nucleus of operative facts as their RICO claims: all claims derive from the Defendants' alleged scheme to not pay RVUs for the services rendered by NPs and PAs. As Wright & Miller explains:

> [A] defendant who already is before the court to defend a federal claim is unlikely to be severely inconvenienced by being forced to defend a state claim whose issues are nearly identical or substantially overlap the federal claim. Notions of fairness to the defendant simply are not offended in this circumstance.

§ 106.7. THH would not be severely inconvenienced by litigating the non-RICO claims at the same time as the RICO claims. Therefore, this Court, in its discretion, will exercise pendent personal jurisdiction over THH with respect to the non-RICO claims.

Based on this Court's denial of THH's motion to dismiss under Rule 12(b)(2) on the grounds set forth above, it is not necessary for the Court to address Plaintiffs' additional arguments

in support of personal jurisdiction over THH.

### B.     Lack of Standing under Rule 12(b)(1)

Plaintiffs plead a breach of contract claim against all Defendants except for HCFS. Plaintiffs also plead that the contracts were signed by ACS and Team Health.  Defendants contend that only ACS signed the agreements at issue.   Because only ACS was a signatory to the agreements, Defendants argue that only ACS can potentially be liable to Plaintiffs for breach of contract.  (Doc. 19-1 at 18).  Although Defendants cite to legal authority for the premise that an action for breach of contract only lies between the parties to the contract, Defendants do not cite to legal authority that all parties to the agreements must sign the contract in order for there to be a plausible breach of contract claim.  (*Id*. at 17-18).

Defendants then jump from the assumption that a party must be a signatory to the contract in order to be potentially liable to arguing that Plaintiffs cannot pierce the corporate veil or rely on the parent-subsidiary relationship to obtain liability against all non-signatory Defendants.  (*Id*. at 18-20).  Defendants do not clarify or even address their lack of standing argument in their reply memorandum.  (Doc. 32).

In opposition to Defendants' motion under Rule 12(b)(1), Plaintiffs highlight that "Defendants admit[] that non-signatory Defendants may be held liable via theories of implied agency." (Doc. 28 at 21 (citing Doc. 21-1 at 14)).  Plaintiffs add that "non-signatories to a contract may be held responsible for the obligations therein; the Supreme Court has noted that a contract may be enforced against nonparties through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" (Doc. 28 at 21 (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631, 129 S.Ct. 1896, 173 L.Ed.2d 832

(2009))).  Plaintiffs are correct in their reliance upon *Arthur Andersen*.  *See also Action Marine v. M/V Norseman*, 1998 WL 419718, \*4 (E.D. La. July 21, 1998) (applying the apparent, implied, or actual agency authority doctrine to hold a non-signatory liable in contract).

The Court is confused by Defendants' utilization of Rule 12(b)(1) and argument of lack of standing.  Defendants fail to point the Court to legal authority supporting their insistence that Plaintiffs lack standing because certain Defendants were not signatories to the contract.

The issue of standing presents a "threshold jurisdictional question" in any suit filed in federal district court. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). The requirement that a party have standing to bring suit flows from Article III of the Constitution, which limits the scope of the federal judicial power to the adjudication of "cases" or "controversies." U.S. Const. art. III, § 2. Standing consists of three elements: (1) the plaintiff must have suffered an "injury-in-fact," which is an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent"; (2) the injury must be "fairly traceable" to the challenged conduct of the defendant; and (3) it must be likely that plaintiff's injury will be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, ⸺ U.S. ⸺, 136 S.Ct. 1540, 1545, 194 L.Ed.2d 635 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).  Defendants do not address the legal issue of standing in any way.

Rather, the Court deems Defendants' motion under Rule 12(b)(1) to be more akin to an additional basis to challenge Plaintiffs' breach of contract claim under Rule 12(b)(6), which is discussed below.

Based on the foregoing, the Court finds that Defendants have not established a lack of jurisdiction based on lack of standing under Rule 12(b)(1).  As such, Defendants' motion under Rule 12(b)(1) is denied.

### C.    Failure to State a Claim under Rule 12(b)(6)

#### 1.    Breach of Contract

"A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ. Code art. 1906.  "The central elements of a breach of contract action are the existence of a contract, a party's breach thereof, and damages." *Favrot v. Favrot*, 2010-0986 (La.App. 4 Cir. 2/9/11), 68 So.2d 1099, 1108-09 (quoting *Hercules Machinery Corp. v. McElwee Bros., Inc.,* 2002 WL 31015598, at *9 (E.D. La. Sept. 2, 2002)).  Stated differently, the elements of a cause of action for breach of contract are: "(1) the obligor's undertaking of an obligation to perform (the contract), (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." *Denham Homes, L.L.C. v. Teche Federal Bank*, 14-1576 (La.App. 1 Cir. 9/18/15), 182 So.3d 108,118.

In their Class Action Complaint, Plaintiffs specifically allege that they "contracted" with Defendants and that Defendants "breached the contract" in "bad faith".  (Doc. 1 at 2-3, 10-11, 21, 27-28).  Plaintiffs allege that they "entered into valid contracts with the Defendants," (Doc. 1 at 27); that they "signed agreements with [Team Health] and ACS that were broken when all of these Defendants failed to pay the Plaintiffs for RVUs they generated due to supervision of APCs," (*id*.); Ameriteam "managed the Plaintiffs' contracts after original signature and dictated [that] the RVUs generated by physicians due to supervision of APCs not be paid," (*id*.); THH "managed the Plaintiffs' contract after original signature and dictated [that] the RVUs generated by physicians due to supervision of APCs not be paid," (*id*. at 28);  Plaintiffs "performed under the contracts

serving patients in the emergency room at [Team Health] facilities for all or part of the preceding six (6) years," (*id.*); Plaintiffs "earned RVU-based bonuses under the terms of the contracts that Defendants failed to pay," (*id.*);  Plaintiffs were damaged, (*id.*); and Defendants' breach of the contracts were in bad faith, entitling Plaintiffs to additional recovery under La. Civ. Code art. 1997, (*id.*).  Therefore, a reading of Plaintiffs' Complaint shows that Plaintiffs plead factual allegations supporting all elements of a breach of contract claim.

Defendants argue that the portions of the contracts quoted in Plaintiffs' Complaint do not support Plaintiffs' allegations.  (Doc. 19-1 at 15-16).  Defendants then go on to argue their interpretation of the contracts at issue and how other, unquoted language in the contracts "modifies" or changes the meaning of the language quoted by Plaintiffs.  (*Id.* at 16). However, the primary issue at this stage of the proceedings is not whether Plaintiffs will ultimately prevail, but whether the substantive nature of the allegations raised in the Complaint are such that the Plaintiffs are entitled to offer evidence to support their claims.  *Jones v. Geninger*, 188 F.3d 322, 324 (5th Cir. 1999).  It would be inappropriate for this Court to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6) unless it appears beyond doubt that Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Such is not the case here and, therefore, Defendants' motion is denied with regard to Plaintiffs' breach of contract claim.[7]

---

[7] The parties' arguments are more appropriate for summary judgment pursuant to Rule 56.  *See, e.g., Highland Capital Management, L.P. v. Bank of America, Nat. Ass'n,* 698 F.3d 202, 206-09 (5th Cir. 2012) (where in reviewing a district court's dismissal of a breach of contract claim under Rule 12(b)(6), the Fifth Circuit considered the matter based on the allegations in the complaint and interpreted in favor of the plaintiff (at 207) and compared the arguments on the terms of the contract and intent of the parties to cases at the summary judgment stage, (at 209); the Fifth Circuit found that the plaintiff "has stated a plausible claim for relief against [the defendant] for breach of contract.... Thus, the district court erred in dismissing for failure to state a claim." *Highland*, 698 F.3d at 210.).

Here, when viewed in the light most favorable to Plaintiffs and taking the allegations as true, the face of the *Complaint* shows Plaintiffs have plead a plausible claim for breach of contract. Defendants' motion to dismiss Plaintiffs' breach of contract claims under Rule 12(b)(6) is denied.

### 2.    RICO

The RICO statutory scheme is aimed at combating organized crime—RICO is located in Title 18 of the criminal code—and the Act imposes criminal and civil liability upon those who engage in certain "prohibited activities" which are listed in 18 U.S.C. § 1962(a) through (c).  Each prohibited activity includes, as one necessary element, proof either of "a pattern of racketeering activity" or of "collection of an unlawful debt." Regardless of which subsection the plaintiff relies upon, all RICO claims under § 1962 have three common elements: (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.  *Abraham v. Singh,* 480 F.3d 351, 355 (5th Cir. 2007) (quoting  *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer,* 90 F.3d 118, 122 (5th Cir. 1996)).

The statute specifically defines  "racketeering activity" and a "pattern of racketeering activity" as requiring at a minimum two acts of racketeering, the last of which must have occurred within ten years of the first. 18 U.S.C. § 1961(5); *H.J., Inc. v. N.W. Bell Tel. Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Crimes not specified in § 1961 *cannot* support a RICO claim. *De Wit v. Firstar Corp.,* 879 F.Supp. 947, 960 (N.D. Iowa Mar. 1, 1995). Private individuals who are injured by criminal RICO activity can recover damages in a civil action. 18 U.S.C. § 1964(c).

Defendants' motion to dismiss under Rule 12(b)(6) challenges all three elements of Plaintiffs' RICO claim.  (Doc. 19-1 at 22).

### a.    *"Person" and "Enterprise" Elements*

The RICO statute defines a "person" as an "individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). An "enterprise" is an "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Defendants argue that the RICO "person" and "enterprise" must be distinct. (Doc. 19-1 at 22 (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161-63 (2001))). Defendants contend that Plaintiffs fail on the first and third elements of their RICO claim because Plaintiffs identify all the Defendants as both the RICO "person" and the RICO "enterprise". (*Id*.).

Plaintiffs argue that "[a]lthough a defendant may not be both a person and an enterprise, a defendant may be both a person and a part of an enterprise. In such a case, the individual defendant is distinct from the organizational entity." (Doc. 28 at 24 (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 447 (5th Cir. 2000))). Plaintiffs contend that Defendants are individual entities/persons, who "operating in accord and in concert to perpetuate the systematic, uniform and routine refusal to pay physicians for Assisting RVUs," comprise the enterprise. Each Defendant is a distinct entity or person, and all Defendants together comprise the "Team Health Organization" or RICO "enterprise". (*Id*.). Plaintiffs argue that their pleading is adequate at this stage of the litigation. (*Id*. (citing *In re Managed Care Litig*., 298 F.Supp.2d 1259, 1275 (S.D. Fla. Dec. 8, 2003)("the pleadings are justifiably limited at this stage because Plaintiffs have not had the aid of discovery"))).

The RICO Act encompasses two kinds of enterprises: legal entities and "associations in fact." *United States v. Turkette,* 452 U.S. 576, 581–82, 101 S.Ct. 2524, 2527–28, 69 L.Ed.2d 246 (1981); *Bennett v. Berg,* 685 F.2d 1053 (8th Cir. 1982). If the enterprise is an "association in fact" enterprise, the plaintiffs must show evidence of an ongoing organization, formal or informal, that

41

functions as a continuing unit over time through a hierarchical or consensual decision-making structure. *Elliott v. Foufas,* 867 F.2d 877, 881 (5th Cir. 1989). Here, Plaintiffs make it clear that they are pleading an "association-in-fact" enterprise. (Doc. 28 at 23). As such, Plaintiffs' Complaint must allege facts supporting an ongoing organization that functioned as a continuing unit over time through a consensual decision-making structure. Plaintiffs' allegations meet this requirement.

Plaintiffs identify and define each "person" or entity named as a Defendant. (Doc. 1 at 4-8). Plaintiffs allege that all Defendants (or "persons") acted "in concert to form the criminal enterprise", labeled the "Team Health Organization". (Doc. 1 at 7). Plaintiffs plead facts supporting the alleged scheme and structure of the enterprise. (*Id*. at 10-11, 16-21). Based on the facts plead, Plaintiffs allege that the Defendants "acted in concert with one another throughout the United States to violate the RICO statute through a pattern of racketeering activity for personal, financial gain, to fraudulently convey false and misleading information concerning the payments to healthcare providers at Team Health facilities." (*Id*. at 21). Plaintiffs continue by alleging that "[t]he pattern of racketeering was perpetrated by all Defendants. These concerted efforts resulted in significant financial harm to the doctors employed at Team Health facilities, including the Plaintiffs and the putative class. But for the actions and inactions of Defendants, individually, jointly, and in concert with one another, Plaintiffs would have been paid for all services provided and performed at the Team Health facilities, including Assisting RVUs." (*Id*.). Plaintiffs then delineate the role of each Defendant or "person" in the purported "association-in-fact" enterprise. (*Id*. at 21-22, 34-35). The Defendants allegedly "acted in concert" to "perpetrate" the alleged violations through the alleged enterprise. (*Id*. at 22).

Tracking the requirements set out by the Fifth Circuit for an "association-in-fact" enterprise, Plaintiffs allege:

> The Defendants are a group of 'persons' associated together in fact for the common purpose of carrying out an ongoing criminal enterprise, as described in the foregoing paragraphs of this Complaint. These Defendants form this association in fact for the common and continuing purpose described herein and constitute  an enterprise within the meaning of 18 U.S.C. § 1961(4) engaged in the conduct of their affairs through a continuing pattern of racketeering activity. Each of the Defendants participated in the operation of or management of the enterprise. The members of the enterprise functioned as a continuing unit with an ascertainable structure separate and distinct from that of the conduct of the pattern of racketeering activity. There may be other members of the enterprise who are unknown at this time, but which will be uncovered during discovery.

(*Id*. at 31).    The purported "enterprise" allegedly "conspired and defrauded" Plaintiffs by "representing and contracting" with Plaintiffs to pay for RVUs generated by physicians in supervising their APCs, "but intentionally and uniformly refusing to do so." (*Id*. at 32). Plaintiffs plead facts supporting a "fraudulent scheme" and "multiple related acts of wire and mail fraud." (*Id*.). The Defendants' "refusal to pay" the RVUs to which Plaintiffs claim they are entitled was "routine" and "systematic". (*Id*.).

Plaintiffs specifically address Defendants' argument as to the "distinctiveness" of the entities. (Doc. 28 at 25). "The subsection [section 1962(c)] requires only some separate and distinct existence for the person and the enterprise, and a subsidiary corporation is certainly a legal entity distinct from its parent." *Haroco, Inc. v. Am. Nat'l Bank & Tr. Co*., 747 F.2d 384, 402 (7th Cir. 1984). In *Haroco*, the court found that the plaintiff's complaint specifically pled which of the defendants were subsidiary companies and which was the parent company and concluded that "more detailed allegations on the subject" would not serve any "useful purpose, and we see no reason to require them." *Id.* at 403.

Defendants responds by repeating that the person and enterprise must not be the same, citing *Bishop v. Corbitt Marine Ways, Inc*., 802 F.2d 122 (5th Cir. 1986).  (Doc. 32 at 7-9).  However, Defendants' reliance upon *Bishop* is misleading.  In *Bishop*, the court pointed out that there was a "sole defendant".  Because there was only one entity as a defendant, alleged to be both the "person" and the "enterprise", this did not satisfy the RICO statute.  *Id*.  This is a distinctly different scenario from the one presented here where there are multiple Defendants, each a distinct entity comprising its own "person".  It is not until the entities come together in furtherance of an alleged organized scheme that the distinct entities or persons comprise an "enterprise".  Defendants accuse Plaintiffs of "ignoring" *Bishop*'s "distinctiveness argument"; however, it is clear to the Court that Plaintiffs not only addressed the argument, but more accurately related the applicable law. (Doc. 32 at 8).

Defendants attempt to discredit *Haroco* with *ISystems v. Spark Networks, Ltd*., 2012 WL 3101672 (5th Cir. 2012).  There, the Fifth Circuit explained the distinctiveness requirement further by stating, "'[i]t is not enough to establish that a defendant corporation through its agents committed the predicate acts in the conduct of its own business. That officers or employees of a corporation, in the course of their employment, associate to commit predicate acts does not establish an association-in-fact enterprise distinct from the corporation.'"  *ISystems,* at *4 (citing *Whelan v. Winchester Production Co.,* 319 F.3d 225, 229 (5th Cir. 2003)).  The *ISystems* court explained how the two defendants, the parent and its subsidiary company, did not act in concert as an enterprise.  Rather, the complaint alleged that the parent allegedly violated RICO by committing acts through its employees/agents.  The *ISystems* court concluded, "Not every wholly owned and controlled subsidiary is an agent of its parent, but ISystems's failure to plead any functional separation between the two dooms its RICO claim. ISystems failed to allege a sufficiently distinct

RICO 'enterprise' and therefore an actionable RICO claim." *ISystems*, at \*5.  Again, Defendants'
application of *ISystems* to the present matter misses the mark.  Here, Plaintiffs have not simply
plead that the actions of the subsidiary Defendants are imputed to the parent Defendant.  Instead,
Plaintiffs have set forth each distinct Defendant entity, its purported role in the alleged scheme,
and the composition of the alleged organization that acted in concert as an enterprise in furtherance
of the alleged criminal scheme.  The Court rejects the applicability of *Bishop* and *ISystems* as
argued by Defendants and, instead, agrees with Plaintiffs that they have sufficiently plead an
"association-in-fact" enterprise comprised of distinct persons under the RICO statute.

### b.      *"Pattern of Racketeering"* Element

RICO imposes civil liability on those who engage in certain "prohibited activities," which
are defined as requiring proof of either "a pattern of racketeering activity" or "collection of an
unlawful debt."  18 U.S.C. § 1962(c).  A pattern of racketeering activity requires at least two
predicate acts of racketeering activity which are related and pose a threat of continued criminal
activity.  18 U.S.C. § 1961(5); *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109
S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Howell Hydrocarbons, Inc. v. Adams,* 897 F.2d 183, 191 (5th
Cir. 1991).  "Racketeering activity" means any act indictable under various specified federal
statutes, and certain federal offenses.  18 U.S.C. § 1961(1).  No prior conviction is required for a
predicate act, but "[a]s defined in the statute, racketeering activity consists not of acts for which
the defendant has been convicted, but for acts which he could be." *Sedima, S.P.R.L. v. Imrex Co.,*
473 U.S. 479, 488, 105 S.Ct. 3275, 3280, 87 L.Ed.2d 346 (1985).

Defendants argue that Plaintiffs' allegations of mail and wire fraud are nothing more than
allegations of a breach of contract claim, mixed with speculation of Defendants' intent, and
conclusory allegations of fraud.  (Doc. 19-1 at 25-27).  In response, Plaintiffs direct the Court to

the allegations of their Complaint detailing allegations of conspiracy, fraud, and mail and wire fraud.  (Doc. 28 at 22-23).

Plaintiffs allege: that Defendants "have perpetrated wire and mail fraud in furtherance of a racketeering scheme in violation of" RICO, (Doc. 1 at 3); that each time the Team Health Organization failed to provide payment to the Plaintiffs for the medical services they provided that involved the supervision of APCs, the Team Health Organization committed a predicate act of wire and mail fraud in furtherance of the RICO conspiracy, (*id*. at 16); that Defendants' failure to pay Plaintiffs the RVUs owed was "in furtherance of the [s]cheme to defraud the Plaintiffs" of "rightfully owed payments," (*id*. at 18); a "pattern of racketeering activity" to "fraudulently convey false and misleading information," (*id*. at 21); a "pattern of racketeering activity" "for the unlawful purpose of intentionally defrauding the Plaintiffs," (*id*. at 31); the Defendants "conspired and defrauded the Plaintiffs" by contracting with Plaintiffs to pay RVUs that were "intentionally and uniformly" never paid, (*id*. at 32); that in furtherance of the "fraudulent scheme, the Defendants committed multiple related acts of wire and mail fraud, including but not limited to all contracts entered into with Team Health doctors, all RVUs generated by physicians due to supervision of APCs that Team Health received payment for but never paid its doctors for, and all payments made to doctors that were not for the full amount owed, including the RVUs generated by physicians due to supervision of APCs," (*id*.); and "the use of the interstate mails and wires" made the "racketeering activity" possible, (*id*.).

The Court finds that Plaintiffs do allege predicate acts that qualify as racketeering activity under RICO, a scheme that was furthered by the alleged activity, and how the alleged activity defrauded and damaged Plaintiffs.  Defendants argue that Plaintiffs' RICO allegations are really allegations of a breach of contract which the Court should not allow to be interpreted as a scheme

to defraud under the mail or wire fraud statutes.  (Doc. 19-1 at 25-26).  However, Plaintiffs sufficiently distinguish between the breach of contracts and the the mail or wire fraud.  Plaintiffs allege that Defendants contracted with Plaintiffs to pay Plaintiffs RVUs and then Defendants breached those contracts by failing to actually pay the RVUs.  Plaintiffs separately allege that, in addition to breaching the contracts which Defendants entered into, Defendants committed wire or mail fraud each and every time a faulty or inadequate payment was mailed or transmitted to Plaintiffs.  Plaintiffs claim that Defendants worked in concert pursuant to a scheme whereby Defendants knowingly and intentionally did not pay Plaintiffs for RVUs associated with Plaintiffs' supervision of NPs and PAs.  Therefore, Defendants were intentionally defrauding Plaintiffs of amounts allegedly due to them.

In interpreting Plaintiffs' allegations in a light most favorable to Plaintiffs, the Court finds that Plaintiffs have sufficiently plead a RICO claim, and Defendants' motion is denied.

Further, Defendants challenge Plaintiffs' pleading of their RICO claim, specifically allegations of fraud, under Rule 9.[8]  (Doc. 19-1 at 27-28).

The predicate acts alleged by Plaintiffs are mail fraud and wire fraud. In order to state a claim for mail fraud under 18 U.S.C. § 1341, the following elements must be pled: (1) the defendant knowingly created a scheme to defraud; (2) the defendant acted with a specific intent to commit fraud; and (3) the defendant mailed something or caused another person to mail something, through the use of the United States Postal Service or any private or commercial interstate carrier, for the purpose of carrying out the scheme.  *Brown v. Coleman Investments, Inc.*, 993 F.Supp. 416, 426 (M.D. La. Jan. 23, 1998).  The elements of a claim for wire fraud under 18 U.S.C. § 1343 are

---

[8] In addition, the Court recognizes that, under Louisiana law, conspiracy to commit fraud is not an independent cause of action but depends on the underlying fraud.  *Schott, Trustee for Estate of InforMD, LLC v. Massengale*, 2019 WL 4741811, *1 (M.D. La. Sept. 27, 2019).

the same as mail fraud, except the third element of wire fraud involves the use of interstate wire communications facilities instead of the mails. *Id.*

Since the predicate acts alleged by Plaintiffs are mail fraud and wire fraud, Plaintiffs must comply with Rule 9(b) which requires particularity in pleading the "circumstances constituting fraud." "At a minimum, Rule 9(b) requires allegations of the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Williams v. WMX Technologies, Inc.,* 112 F.3d 175, 177 (5th Cir .1997); *also see Tel–Phonic Services, Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1139 (5th Cir.1992) (citing 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1297 at 590 (1990); *also see Keith v. Stoelting, Inc.,* 915 F.2d 996, 1000 (5th Cir.1990)).  In other words, "articulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Technologies, Inc.,* 112 F.3d 175, 177 (5th Cir.1997) (citing *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993)).  Considering the above principles, Plaintiffs must particularly plead the following elements of fraud: "1) a misstatement or omission; 2) of material fact; 3) made with the intent to defraud; 4) on which the plaintiff relied; and 5) which proximately caused the plaintiff's injury." *Williams,* 112 F.3d at 177 (citing *Cyrak v. Lemon,* 919 F.2d 320 (5th Cir.1990)).  Rule 9(b) does allow "[a]llegations about conditions of the mind, such as defendant's knowledge of the truth and intent to deceive to be made generally." *Tel–Phonic,* 975 F.2d at 1139.

For the reasons set forth above, the Court finds that Plaintiffs have sufficiently plead their RICO claim and predicate act of wire and mail fraud with particularity under Rule 9.  Plaintiffs' allegations set forth the alleged misrepresentations of Defendants, which Defendant entities acted

in what capacities within the alleged enterprise to confect the scheme, the time period of the alleged fraudulent activity, how (to the best of Plaintiffs' present knowledge and without the benefit of discovery) Defendants misled and defrauded Plaintiffs, and the alleged resulting damages. As plead, the scheme is alleged to have benefited the Defendants in that they profited from the increased patient volume treated by Plaintiffs, and Plaintiffs were damaged by not being paid the bonuses promised to them that incentivized the work.

### 3.    Unjust Enrichment Claim

Plaintiffs also argue that they should recover under the theory of unjust enrichment. Plaintiffs claim that Defendants were unjustly enriched by profiting from Plaintiffs' increased volume of patients but in failing to bonus Plaintiffs as Defendants represented that they would.

To establish a claim for unjust enrichment under Louisiana law, a claimant must prove: "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the resulting impoverishment, (4) an absence of 'justification' or 'cause' for the enrichment and impoverishment, and (5) no other remedy at law." *Brown v. Coleman Investments, Inc.*, 993 F.Supp. 432, 439 (M.D. La. 1998), citing *Baker v. Maclay Properties Co.*, 648 So.2d 888, 897 (La. 1995)(citations omitted). Courts may "'resort to equity only in cases of unjust enrichment for which there is no justification in law or contract.'" *Id.*, citing *SMP Sales Mgt., Inc. v. Fleet Credit Corp.*, 960 F.2d 557, 560 (5th Cir. 1992)(citations omitted). Stated simply, " '[q]uasi-contractual remedies may not supplant a contract between the parties.'" *Id.*, quoting *Marple v. Kurzweg*, 902 F.2d 397, 104 (5th Cir. 1990) (citations omitted) (emphasis added).

Defendants argue that Plaintiffs fail to state a claim for unjust enrichment because there are other legal remedies available to Plaintiffs. Specifically, an unjust enrichment claim cannot lie when the claim is based on a relationship controlled by a contract, as Plaintiffs allege here. (Doc.

19-1 at 21).  Defendants' arguments are supported by the jurisprudence.

The Louisiana Supreme Court held in *Edwards v, Conforto,* 636 So.2d 901 (La. 1993),  that a contract between the parties serves as "legal cause" or "justification" for one party's enrichment, which precludes the other party from recovering under a theory of unjust enrichment.  In *T.L. James & Company, Inc. v. Traylor Bros, Inc.*, 294 F.3d 743 (5th Cir. 2002), the Fifth Circuit Court of Appeals also addressed a contract dispute arising out of a port authority wharf construction project. One of the parties asserted a claim of recovery under the doctrine of unjust enrichment. The district court had denied the unjust enrichment claim. The Fifth Circuit affirmed the decision of the district court, finding that the Traylor had not met its burden under the theory of unjust enrichment for several reasons. The court held:

> In addition, the Port contends that even assuming *arguendo* that there was an "enrichment," a claim for unjust enrichment was nullified by the contract. We agree. Traylor has not met the first and second elements of an unjust enrichment claim. The Port was not enriched—it received what it bargained for under the contract, a wharf structure, and nothing more. In addition, since the contract provided for a remedy for any additional costs incurred by Traylor, it has failed to meet the fifth element, i.e., no remedy at law.

*Id.*, at 747 (citations omitted) (emphasis added).  Thus, both the state and federal courts hold that the existence of a contract between the parties alone defeats a claim for unjust enrichment. For the reasons set forth above, the Court finds that plaintiff is precluded from obtaining relief under the theory of unjust enrichment under the law and facts of this case.  *See SJB Grp., L.L.C. v.. TBE Grp., Inc.,* No. 12–181, 2013 WL 6194571, at *16 (M.D.La. Nov. 26, 2013) (explaining that "Unjust enrichment is a remedy of 'last resort' and 'only applicable to fill a gap in the law where no express remedy is provided" and dismissing Plaintiffs' claims because they had other remedies at law available to them.). Based on the foregoing, the unjust enrichment claims should be dismissed.

Defendants also argue that Plaintiffs do not really address the unjust enrichment argument in their opposition.  The only mention of Plaintiffs' unjust enrichment claim is in a footnote, where they simply disagree with Defendants' argument.  *See* Doc. 28 at 19, n. 5.  Such a response to Defendants' challenge to Plaintiffs' pleading is insufficient.  *JMCB, LLC v. Bd. of Commerce & Indus.*, 336 F.Supp.3d 620, 634 (M.D. La. 2018)("failure to brief an argument in the district court waives that argument in that court").  A failure to oppose the substance of an argument is a waiver and dismissal is proper on these grounds alone.  *Bourgeois v. Walmart Inc*., 2020 WL 1161928, *3 (M.D. La. 2020).

Defendants' motion to dismiss Plaintiffs' unjust enrichment claim is granted.

### 4.    Declaratory Judgment Act Claim

The same analysis that applies to Plaintiffs' unjust enrichment claim, equally applies to Plaintiffs' declaratory judgment claim.  Plaintiffs' declaratory judgment claim[9] is redundant because the relief it seeks is duplicative of the issues involved in Plaintiffs' breach of contract and RICO claims.    In such a situation as this, a request for a declaratory judgment need not be permitted if it adds nothing to the suit. *See Pan–Islamic Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir. 1980).

Here, the declarations Plaintiffs seek are entirely derivative of their other claims.  Thus, these redundant declaratory judgment claims will not survive a Rule 12(b)(6) motion. *See, e.g.*, *Edwards v. U.S. Bank N.A.*, No. 2016 WL 4574585, at *6 (W.D. La. June 28, 2016) (dismissing cause of action for declaratory relief because it was duplicative of other claims).

Additionally, Defendants also argue that Plaintiffs do not address the declaratory judgment

---

[9] Plaintiffs allege Count Four, stating, "Plaintiffs and the putative class seek a Declaratory Judgment by the Court pursuant to 28 U.S.C. §§ 2201-2202 determining the rights of the Plaintiffs and the Putative class, and injunctive relief affording an accounting, restitution, and future payment of all RVUs generated due to supervision of APCs."  (Doc. 1 at 36).

argument in their opposition.   (Doc. 32 at 10).   The only mention of Plaintiffs' declaratory judgment claim is in a footnote, where they simply state, "Plaintiffs' Declaratory Judgment Claim must survive if the Court does not dismiss all of the Counts listed in their complaint."  (*See* Doc. 28 at 19, n. 5).  No legal authority is provided.  Again, such a cursory response to Defendants' challenge to Plaintiffs' pleading is insufficient for the same reasons as stated above with regard to Plaintiffs' unjust enrichment claim.  *JMCB, LLC v. Bd. of Commerce & Indus*., 336 F.Supp.3d 620, 634 (M.D. La. 2018);  *Bourgeois v. Walmart Inc*., 2020 WL 1161928, *3 (M.D. La. 2020).

For these reasons, Defendants' motion to dismiss Plaintiffs' declaratory judgment claim is granted.

### D.    Leave to Amend

In the event this Court granted any portion of Defendants' motion, Plaintiffs requested that the Court dismissed the claims without prejudice and grant Plaintiffs an opportunity to amend. (Doc. 28 at 2, n. 1).

Federal Rules of Civil Procedure 15(a) "requires the trial court to grant leave to amend freely," further "the language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005) (internal citations omitted). However, "leave to amend is in no way automatic, but the district court must possess a 'substantial reason' to deny a party's request for leave to amend." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Jones*, 427 F.3d at 994). The Fifth Circuit further described the district courts' discretion on a motion to amend as follows:

> The district court is entrusted with the discretion to grant or deny a motion to amend and may consider a variety of factors including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., and futility of the amendment." *Jones*, 427 F.3d at 994. (citation omitted). "In light of the presumption in favor of allowing pleading amendments, courts of appeals

> routinely hold that a district court's failure to provide an adequate explanation to support its denial of leave to amend justifies reversal." *Mayeaux v. La. Health Serv. & Indent. Co.*, 376 F.3d 420, 426 (5th Cir. 2004) (citation omitted). However, when the justification for the denial is "readily apparent," a failure to explain "is unfortunate but not fatal to affirmance if the record reflects ample and obvious grounds for denying leave to amend." (citation and internal quotation marks omitted).

*Id.* 751 F.3d at 378.

In addition, the Fifth Circuit has made clear that "denying a motion to amend is not an abuse of discretion if allowing an amendment would be futile." *Id.* (citing *Boggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003)). An amendment would be deemed futile "if it would fail to survive a Rule 12(b)(6) motion." *Id.*

Applying this standard, the Court will reject Plaintiffs' request for an amendment. The Court finds that any amendment to Plaintiffs' unjust enrichment and declaratory judgment claims would be futile for the reasons discussed above. The Court denies Plaintiffs leave to amend and dismisses their unjust enrichment (Count II) and declaratory judgment (Count IV) claims with prejudice.

## V.   Conclusion

Accordingly,

**IT IS ORDERED** that Defendants' *Motion to Dismiss* (Doc. 19) pursuant to Rule 12(b)(1) is **DENIED.**

**IT IS ORDERED** that Defendants' *Motion to Dismiss* pursuant to Rule 12(b)(2) is **DENIED.**

**IT IS ORDERED** that Defendants' *Motion to Dismiss* pursuant to Rule 12(b)(6) is **DENIED as to Count I (breach of contract) and Count III (RICO).**

**IT IS ORDERED** that Defendants' *Motion to Dismiss* pursuant to Rule 12(b)(6) is **GRANTED as to Count II (unjust enrichment) and Count IV (declaratory judgment)**. Plaintiffs' unjust enrichment and declaratory judgment claims are **DISMISSED WITH PREJUDICE**.

**IT IS ORDERED** that Plaintiffs' motion for leave of court to amend their Complaint is **DENIED.**

Signed in Baton Rouge, Louisiana, on September 29, 2020.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**